UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

CEDRIC MARSHALL,                                           :

                    Plaintiff,                              :

         -against-                                              :

THE PORT AUTHORITY OF NEW YORK                             :
AND NEW JERSEY, *et al.*,                                  :
                                                           :
               Defendants.                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

                          19cv2168

                       MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

       Defendants The Port Authority of New York and New Jersey (the "Port

Authority") and Port Authority Police Department ("PAPD") Officers Bryan Mathews, Craig

Carlson, Sean Gallagher, and John Tone (collectively, the "Defendants"), move for summary

judgment in this civil rights action.  Cedric Marshall brings claims for false arrest and false

imprisonment, malicious prosecution, failure to intervene, malicious abuse of process,

deprivation of rights and denial of equal protection, conspiracy, negligent hiring, and municipal

liability.  For the reasons that follow, Defendants' motion is granted in part and denied in part.

BACKGROUND

       On November 4, 2017, at approximately 9:00 a.m., Marshall was seated on a

bench in the "ticketed passenger only" area of the Port Authority Bus Terminal ("PABT").  (Pl.'s

Resp. to Defs.' Statement of Undisputed Facts Pursuant to Rule 56.1, ECF No. 59 ("Pl.'s 56.1"),

¶ 18.)  After noticing that Marshall's eyes were closed, Officers Mathews and Gallagher

approached and asked him to produce identification.  (Pl.'s 56.1 ¶¶ 19–21.)  Marshall presented a

New York State Benefit Identification Card.[1]  (Pl.'s 56.1 ¶ 21; Smith Decl., Ex. I.)  Officer

Mathews radioed the PAPD Central Police Desk to inquire whether Marshall had any open

warrants.  (Pl.'s 56.1 ¶ 21.)  Although the warrant check came back negative, the police desk

informed Officer Mathews that Marshall's license had previously been suspended because of

drug offenses.  (Pl.'s 56.1 ¶ 21.)

        The following exchange is disputed.  Officers Mathews and Gallagher testified

that they asked Marshall for his bus ticket because he was in a restricted area of the PABT.

(Mathews Dep., at 31:6–14; Smith Decl., Ex. D ("Gallagher Dep."), at 20:3–14.)  Marshall

contends that the officers never asked for a bus ticket, but he claims he had one in his wallet.

(Smith Decl., Ex. F ("Marshall Dep."), at 98:12–17.)  In any event, Marshall did not produce

one.  (Pl.'s  56.1 ¶ 21.)  Instead, he told the officers that he was traveling to visit his brother in

Patterson, New Jersey.  (Marshall Dep., at 61:11–17, 96:17–97:22.)

        According to the officers, Marshall was trespassing.  (Mathews Dep., at 34:18–

35:6; Gallagher Dep., at 27:4–28:10.)  During this encounter, Officer Mathews never gave

Marshall an order to leave the ticketed area or a chance to purchase a ticket.  (Mathews Dep., at

36:7–38:9.)  Both officers testified that they detected an odor of marijuana on Marshall.  (Pl.'s

56.1 ¶ 22.)  The officers placed Marshall under arrest, handcuffed him, patted him down, and

began escorting him to the PABT police command.  (Pl.'s 56.1 ¶ 23.)

        According to Officer Mathews, while en route to the PABT police command,

Marshall contorted his body and removed a folded dollar bill and small bag of marijuana from

his person and dropped them to the ground.  (Pl.'s 56.1 ¶¶ 23–25; Mathews Dep., at 49:7–52:25,

---

[1]      Officer Mathews did not recall that Marshall provided any form of identification.  (Decl. of Jonathan I. Smith, ECF No. 54 ("Smith Decl."), Ex. B ("Mathews Dep."), at 36:6–14.)

54:10–12.)  The folded dollar bill contained a white powdery substance.  (Pl.'s 56.1 ¶ 30.)

Officer Carlson, who was positioned outside the PABT police command, also observed these

items fall from behind Marshall's body, which he retrieved and brought to the PABT police

command.  (Pl.'s 56.1 ¶ 27; Smith Decl., Ex. C ("Carlson Dep."), at 20:19–22, 30:9–12, 31:24–

32:2.)  While Officer Gallagher did not see Marshall drop anything, he saw a bag of marijuana

on the floor near Marshall.  (Gallagher Dep., at 36:17–37:7.)  Marshall does not recall if he

dropped anything.  (Marshall Dep., at 101:2–17.)

       Marshall was taken into the PAPD prisoner search area and handcuffed to the

search wall.  (Pl.'s 56.1 ¶¶ 31–32.)  Officers Mathews and Gallagher testified that they observed

Marshall fidgeting and concealing a piece of tinfoil underneath his foot.  (Pl.'s 56.1 ¶ 33.)  The

recovered tinfoil contained alleged crack cocaine.  (Pl.'s 56.1 ¶ 33.)  Officer Gallagher also

searched Marshall's person and discovered two bags containing powdery substances from inside

Marshall's sock.  (Pl.'s 56.1 ¶ 35.)  After Marshall was placed in a PAPD holding cell, an officer

observed him putting items into the toilet.  (Pl.'s 56.1 ¶ 37.)  The officers prevented Marshall

from flushing the toilet and recovered a bag containing a powdery substance.  (Pl.'s 56.1 ¶ 38.)[2]

       On November 5, 2017, Marshall appeared in New York County Criminal Court,

and was arraigned on the following charges: one count of criminal possession of a controlled

substance in the third degree, N.Y. Penal Law § 220.16(1); three counts of tampering with

physical evidence, N.Y. Penal Law § 215.40(2); one count of criminally using drug

paraphernalia in the second degree, N.Y. Penal Law § 220.50(2); two counts of criminal

---

[2]     All of the alleged contraband was vouchered and sent to the New York Police Department ("NYPD") Lab
for testing.  The small bag of marijuana tested positive for marijuana, the white powdery substance in the folded
dollar bill tested positive for cocaine, and the tinfoil containing alleged crack cocaine tested positive for cocaine.
(Pl.'s 56.1 ¶¶ 29, 30, 34.)  The powdery substances inside the two bags in Marshall's sock and inside the bag
recovered from the toilet bowl did not reveal any controlled substances.  (Pl.'s 56.1 ¶¶ 36, 39.)

possession of a controlled substance in the seventh degree, N.Y. Penal Law § 220.03; one count

of trespass, N.Y. Penal Law § 140.05; and one count of unlawful possession of marijuana, N.Y.

Penal Law § 221.05.  (Pl.'s 56.1 ¶ 40.)

       Marshall was unable to make bail and was detained until his next court

appearance on November 9, 2017.  (Pl.'s 56.1. ¶ 41.)  During that appearance, the Assistant

District Attorney ("ADA") from the New York County District Attorney's Office dismissed

Marshall's felony charge (criminal possession of a controlled substance in the third degree) and

requested the case proceed as a misdemeanor.  (Pl.'s 56.1 ¶ 41.)  The criminal court judge

ordered that the ADA produce the requisite supporting depositions in order to convert the

criminal court complaint into an information and Marshall was released from custody.  (Pl.'s

56.1 ¶ 41.)  On December 19, 2017, Marshall appeared in criminal court and the judge adjourned

the case to February 7, 2018.  (Pl.'s 56.1 ¶ 42.)  On February 7, 2018, Marshall appeared again,

but because the ADA failed to file a statement of readiness, the case was dismissed on speedy

trial grounds pursuant to New York Criminal Procedure Law ("C.P.L.") § 30.30.  (Pl.'s 56.1

¶ 43.)

       Marshall filed this action in New York State Supreme Court, Bronx County.

Defendants timely removed, (ECF No. 1), and this Court denied Marshall's motion to remand,

(ECF No. 11).  Marshall filed an Amended Complaint ("AC") on May 31, 2019.  (ECF No. 22.)

Marshall asserts the following claims: (1) false arrest and false imprisonment pursuant to 42

U.S.C. § 1983 and state law; (2) malicious prosecution pursuant to § 1983 and state law; (3)

failure to intervene pursuant to § 1983 and state law; (4) malicious abuse of process pursuant to

§ 1983 and state law; (5) deprivation of rights and denial of equal protection of the laws pursuant

to § 1983, 42 U.S.C. § 1981, and state law; (6) conspiracy pursuant to 42 U.S.C. §§ 1985(3) and

1986; (7) a state common law negligent hiring claim; and (8) a <u>Monell</u> claim against the Port

Authority.[3]  At oral argument, Marshall withdrew all claims against Officers Carlson and Tone.

(<u>See</u> Tr. of February 28, 2020 Arg., at 12, 16–17.)

DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is proper only where "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"Where the record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."  <u>Baez v. JetBlue Airways Corp.</u>, 793 F.3d

269, 274 (2d Cir. 2015) (quotation marks omitted).  This Court is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

<u>Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.</u>, 444 F.3d 158, 162 (2d Cir. 2006) (citing

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)).

"The party seeking summary judgment bears the burden of establishing that no

genuine issue of material fact exists . . . ."  <u>Rodriguez v. City of New York</u>, 72 F.3d 1051, 1060–

61 (2d Cir. 1995).  If the moving party meets its burden, "the adverse party must set forth

specific facts showing that there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 250 (citation

and quotation marks omitted); <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment," as "conclusory allegations or denials cannot by themselves create a

genuine issue of material fact where none would otherwise exist."  <u>Hicks v. Baines</u>, 593 F.3d

159, 166 (2d Cir. 2010) (citation and alterations omitted).  "In determining whether a genuine

---

[3]      Marshall withdrew all claims of excessive force, assault, battery, and emotional distress.  (ECF No. 42.)

issue of material fact exists, a court must resolve all ambiguities and draw all reasonable

inferences against the moving party." Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2d Cir.

2001).

II.     False Arrest and False Imprisonment

Marshall brings claims for false arrest and false imprisonment[4] against Officers

Mathews and Gallagher under § 1983 and New York law. "The elements of a claim of false

arrest under § 1983 are substantially the same as the elements of a false arrest claim under New

York law." Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992) (quotation marks omitted).

"Under New York state law, to prevail on a claim of false arrest a plaintiff must show that (1) the

defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the

plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

privileged." Jocks v. Tavernier, 316 F.3d 128, 134–35 (2d Cir. 2003) (quotation marks omitted);

Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

"The existence of probable cause to arrest constitutes justification and is a

complete defense to an action for false arrest, whether that action is brought under state law or

under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quotation

marks omitted). "In general, probable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). In determining

probable cause, a court "must consider those facts available to the officer at the time of the arrest

and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996),

---

[4]     "In New York, the tort of false arrest is synonymous with that of false imprisonment." Posr v. Doherty,
944 F.2d 91, 96 (2d Cir. 1991).

6

as amended (May 21, 1996).  Moreover, courts consider "the circumstances from the perspective

of an objectively reasonable police officer, recognizing that the officer is entitled to draw

reasonable inferences on the basis of his prior experience."  United States v. Pabon, 871 F.3d

164, 174 (2d Cir. 2017).

       Defendants argue that Officers Mathews and Gallagher had probable cause to

arrest Marshall because he was trespassing in the "ticketed passenger only" area of the PABT

and "did not produce a bus ticket, did not produce identification with an address, was emitting a

strong smell of marijuana and admitted to possessing marijuana previously."[5]  (Mem. of Law in

Supp. of Defs.' Mot. for Summ. J. Pursuant to Fed. R. Civ. P. 56, ECF No. 55 ("Defs.' Mem."),

at 6.)  Under New York law, it is an act of criminal trespass when an individual "knowingly

enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.  Relevant here,

"[a] person 'enters or remains unlawfully' in or upon premises when he is not licensed or

privileged to do so."  N.Y. Penal Law § 140.00(5).  And where the premises "are at the time

open to the public," a person "enters or remains unlawfully" if "he defies a lawful order not to

enter or remain, personally communicated to him by the owner of such premises or other

authorized person."  N.Y. Penal Law § 140.00(5).

---

[5]    A court must examine "each piece of evidence and consider[] its probative value, and then look[s] to the totality of the circumstances to evaluate whether there was probable cause to arrest and prosecute the plaintiff." Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013) (second alteration in original) (quotation marks omitted). However, the Defendants' other pieces of evidence surrounding Marshall's initial trespass arrest are uncertain.  For example, C.P.L. § 140.50 permits an officer to stop "a person in a public place . . . when he reasonably suspects that such a person is committing, has committed or is about to commit either (a) a felony or (b) a misdemeanor . . . and may demand of him his name, address and an explanation of his conduct."  But failing to provide an identification with an address does not create probable cause for arrest.  See, e.g., Gonzalez v. City of New York, 2016 WL 5477774, at *12 (S.D.N.Y. Sept. 29, 2016) ("Any suggestion that Plaintiff's refusal to hand over her identification to Defendant Medina gave rise to probable cause for arrest is incorrect.").  Moreover, both Officers Mathews and Gallagher testified that their probable cause for arresting Marshall was based on trespass, not the alleged smell of marijuana or Marshall's criminal record.  (See Mathews Dep., at 45:6–16; Gallagher Dep., at 27:4–18.)

Construing the record in the light most favorable to Marshall, a genuine dispute of material fact exists as to whether Officers Mathews and Gallagher had probable cause to arrest Marshall for trespass.  The PABT is a public facility and many parts of the station are open to the public.  See People v. Bright, 520 N.E.2d 1355, 1361 (N.Y. 1988) (holding the PABT was a public place and invalidating loitering statute as unconstitutionally vague); cf. Wolin v. Port of N.Y. Auth., 392 F.2d 83, 88– 91 (2d Cir. 1968) (finding central terminal area of the PABT was a traditional public forum for purposes of exercising First Amendment rights).  However, while the PABT is a public facility, "[a] license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."  N.Y. Penal Law § 140.00(5).  Here, Marshall was seated in a section designated "ticketed passenger only" area, (Pl.'s 56.1 ¶ 18), and he acknowledged seeing those signs, (Marshall Dep., at 79:3–11).  Moreover, Marshall never produced a bus ticket during his encounter with Officers Mathews and Gallagher.  (Pl.'s 56.1 ¶ 21.)

However, Marshall presents evidence that raises a material dispute of fact regarding the officers' knowledge of whether he was entitled to be in this restricted area.  It is a defense to criminal trespass that the individual "honestly believe[d] that he [wa]s licensed or privileged to enter" the premises.  People v. Basch, 325 N.E.2d 156, 159 (N.Y. 1975).  According to Marshall, he was sitting in the restricted area because he was waiting for a bus to go to Patterson, New Jersey to visit his brother.  (Marshall Dep., at 61:11–17.)  Marshall claims that the reason he never produced a bus ticket—which was in his wallet—is because the officers never asked for one.  (Marshall Dep., at 98:12–17.)

It is true that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of

8

innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); see also Carpenter v. City of New York, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) ("An arresting officer has no duty to investigate exculpatory defenses, or to assess the credibility of claims regarding exculpatory defenses."). Nonetheless, officers may not "deliberately disregard facts known to [them] which establish" an exculpatory defense. Jocks, 316 F.3d at 136. And "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (quotation marks omitted).

While both officers contend that they asked Marshall for a bus ticket, Marshall disputes this fact. (Marshall Dep., at 96:22–97:7, 98:12–17.) If a jury were to believe that Marshall possessed a bus ticket—but the officers never asked for one or asked him to leave the area—then the officers would not have probable cause to arrest him for trespass. Cf. People v. Carter, 790 N.Y.S.2d 459, 460 (App. Div. 2005) (officer had probable cause to arrest defendant in restricted area of the PABT for criminal trespass because "defendant admitted to the officer that he was not a bus passenger, and failed to produce a reliable form of identification"). Therefore, Marshall's testimony is sufficient to bar summary judgment on this portion of his claim. See Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) (denying summary judgment where officer's version of arrest was contradicted by plaintiff's, and noting that "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment" (alteration in original) (quotation marks omitted)).

However, the officers' subsequent discovery of narcotics limit Marshall's potential entitlement to damages. Although Marshall's initial detention may have been unlawful,

the Second Circuit has rejected the application of the "fruit of the poisonous tree doctrine" to § 1983 actions.  Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999) ("The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant."); Jenkins v. City of New York, 478 F.3d 76, 91 n.16 (2d Cir. 2007).  In Townes, the Second Circuit held that a plaintiff could not recover damages under § 1983 for "his arrest, conviction, and incarceration" based on handguns and cocaine discovered during an unlawful stop and search.  Townes, 176 F.3d at 141, 149.  However, the Circuit recognized that a plaintiff may seek damages based on the "brief invasion of privacy related to the seizure and initial search of his person."  Townes, 176 F.3d at 149.  "Courts considering Townes have since found that plaintiffs may recover damages from a false arrest subsequently supported by probable cause, where such damages are limited to the period between the arrest and the acquisition of probable cause."  Jenkins v. New York City Police Dep't, 2015 WL 4660899, at *4 n.4 (S.D.N.Y. Aug. 6, 2015); see also, e.g., Faraone v. City of New York, 2016 WL 1092669, at *6 (S.D.N.Y. Mar. 21, 2016); Morgan v. City of New York, 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014); Lust v. Joyce, 2007 WL 3353214, at *2 (N.D.N.Y. Nov. 9, 2007).

While Officers Mathews and Gallagher transported Marshall to the PABT police command, Mathews and Carlson saw Marshall drop a folded dollar bill and a small bag of marijuana.  Therefore, the officers had probable cause to arrest Marshall for, at least, unlawful possession of marijuana under N.Y. Penal Law § 221.05 when narcotics began falling from Marshall's person.  When asked whether he dropped anything from his pockets, Marshall testified only that "I don't recall anything happening."  (Marshall Dep., 101:15–17.)  But this statement does not constitute a denial and is insufficient to create a genuine dispute of material

fact.  See F.D.I.C. v. Nat'l Union Fire Ins. Co., 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials

and memory lapses . . . do not create genuine issues of material fact."); see also Genger v.

Genger, 663 F. App'x. 44, 49 n.4 (2d Cir. 2016) (summary order) (finding that a statement that

one "ha[d] no recollection" of a fact "does not constitute a denial").

   Therefore, Marshall may proceed with his § 1983 false arrest claim, but only

based on injuries stemming from the brief interval between his initial detention and the discovery

of marijuana.  See, e.g., Faraone, 2016 WL 1092669, at *6 ("[Plaintiff] may seek damages on his

false arrest claim only for injuries related to that claim that occurred prior to the discovery of

marijuana."); Lust, 2007 WL 3353214, at *2 (allowing false arrest claim for finite period

between initial detention unsupported by probable cause and subsequent discovery of a knife).

His state law false arrest claim may proceed on that same basis.

III. Malicious Prosecution

   Marshall asserts claims for malicious prosecution against Officers Mathews and

Gallagher under § 1983 and New York law.  To prevail on a malicious prosecution claim under

both § 1983 and New York law, a plaintiff is required to demonstrate: "(i) the commencement or

continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in

[his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding

was instituted with malice."  Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016)

(quotation marks omitted).  Additionally, a § 1983 plaintiff must demonstrate a post-arraignment

deprivation of liberty sufficient to implicate his Fourth Amendment rights.  Swartz v. Insogna,

704 F.3d 105, 112 (2d Cir. 2013).[6]

---

[6] Marshall satisfies this additional § 1983 element because he was held in jail following his arraignment and was required to appear at multiple court appearances related to his charges.  See Swartz, 704 F.3d at 111–12.

Defendants argue that Marshall cannot satisfy the first element of a malicious prosecution claim because—unlike the ADAs—none of the officers initiated or continued the prosecution against Marshall.  However, a plaintiff can satisfy this element if he demonstrates that an officer brought formal charges and had the plaintiff arraigned, filled out complaining and corroborating affidavits, or signed felony complaints.  See Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005); see also Cameron v. City of New York, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments.").  Here, Officer Gallagher reported that he recovered narcotics from Marshall's person to Officer Mathews, who signed the felony criminal complaint. (See Smith Decl., Ex. S.)  Both Officers Mathews and Gallagher also testified that they spoke with an ADA regarding Marshall's arrest.  Therefore, a reasonably jury could find that both officers initiated the criminal proceedings against Marshall.  See, e.g., Llerando-Phipps, 390 F. Supp. 2d at 383 (finding "initiation" element met by complaining officer who filed accusatory instrument and officer who reported the evidence to the complaining officer); Maldonado v. City of New York, 2014 WL 787814, at *7 (S.D.N.Y. Feb. 26, 2014) (same).

The second element, favorable termination, presents a closer question.  As to the state claims, the New York Court of Appeals has held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused."  Cantalino v. Danner, 754 N.E.2d 164, 167 (N.Y. 2001).  Under New York law, the dismissal of a prosecution on speedy trial grounds is considered a favorable termination.  Smith-Hunter v. Harvey, 734 N.E.2d 750, 755–56 (N.Y. 2000).  Here, it is undisputed that Marshall's case was dismissed on speedy trial grounds pursuant C.P.L. § 30.30.

(Pl.'s 56.1 ¶ 42.)  Therefore, Marshall can prevail on the "favorable termination" element for his state malicious prosecution claim.

However, in <u>Lanning v. City of Glens Falls</u>, the Second Circuit held that the aforementioned New York state rule swept too broadly to apply to a § 1983 claim.  908 F.3d 19, 27–28  (2d Cir. 2018).  The Court of Appeals clarified that "federal law defines the elements of a § 1983 malicious prosecution claim" and "requir[es] affirmative indications of innocence to establish 'favorable termination.'"  <u>Lanning</u>, 908 F.3d at 25.  Moreover, where a dismissal "leaves the question of guilt or innocence unanswered, it cannot provide the favorable termination required as the basis for that claim."  <u>Lanning</u>, 908 F.3d at 25 (alterations and quotation marks omitted).

Here, this Court agrees with other district judges in this Circuit who have held that dismissal of a plaintiff's case on speedy trial grounds "does not affirmatively indicate his innocence, as required under Section 1983."  <u>Thompson v. City of New York</u>, 2019 WL 162662, at *4 (S.D.N.Y. Jan. 10, 2019); <u>Roger v. Cty. of Suffolk</u>, 2020 WL 2063415, at *2 (E.D.N.Y. Apr. 29, 2020); <u>Jamison v. Cavada</u>, 2019 WL 6619328, at *5 (S.D.N.Y. Dec. 5, 2019); <u>but see</u> <u>Nelson v. City of New York</u>, 2019 WL 3779420, at *12 (S.D.N.Y. Aug. 9, 2019) ("[T]he signposts above lead this Court to conclude . . . that the dismissal here of the charges against [the plaintiff] under § 30.30 fulfills the second element of a malicious prosecution claim under § 1983.").  While the Court of Appeals acknowledged that "the dismissal of a prosecution on speedy trial grounds is a favorable termination" under the traditional common law, <u>Lanning</u>, 908 F.3d at 27 n.6, it also noted that "common law principles are meant simply 'to guide rather than to control the definition of § 1983 claims . . . ,'" <u>Lanning</u>, 908 F.3d at 25 (quoting <u>Manuel v. City of Joliet</u> 137 S. Ct. 911, 921 (2017)).  Although there are some instances in which a speedy trial

dismissal may affirmatively indicate innocence, it is uncertain whether the Second Circuit would apply a mechanical rule that <u>every</u> speedy trial dismissal meets that standard.  Indeed, "New York's speedy trial statute does not mandate dismissal of an action when a defendant is demonstrably innocent—it requires dismissal where the prosecution is not ready for trial within certain specified time periods.  If the prosecution does not comply with the statute, its case will be dismissed even as to the most guilty defendant."  <u>Roger</u>, 2020 WL 2063415, at *2.  Therefore, Marshall has not met the "favorable termination" element for his § 1983 claim.

As to the third element, for purposes of a New York malicious prosecution claim, probable cause "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of."  <u>Cardoza v. City of New York</u>, 29 N.Y.S.3d 330, 340 (App. Div. 2016) (quotation marks omitted).  And for the fourth element, "malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  <u>Lowth</u>, 82 F.3d at 573 (quoting <u>Nardelli v. Stamberg</u>, 377 N.E.2d 975, 976 (N.Y. 1978)).

Here, Defendants reiterate their probable cause analysis.  However, the conflicting testimony concerning Marshall's initial arrest for trespass is sufficient to raise a genuine dispute concerning whether Officers Mathews and Gallagher had probable cause to prosecute Marshall for that charge.  Moreover, Defendants do not discuss every charge on which Marshall was arraigned.  But if the officers arrested plaintiff without probable cause, a reasonable juror could conclude that the officers did not have probable cause to believe that

Marshall could be successfully prosecuted for those charges.[7]  And because "[m]alice may be inferred . . . from the absence of probable cause," <u>Dufort v. City of New York</u>, 874 F.3d 338, 353 (2d Cir. 2017), these factual disputes must be left to a jury.  Accordingly, Defendants' motion for summary judgment on Marshall's malicious prosecution claims is granted as to the § 1983 cause of action but denied as to the state cause of action.

IV.    <u>Failure to Intervene</u>

Marshall brings a failure to intervene claim under § 1983 and New York law against Officer Gallagher.  "[L]aw enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence."  <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official."  <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).

A failure to intervene claim does not exist when the underlying constitutional claim has been dismissed.  <u>See Bancroft v. City of Mount Vernon</u>, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009).  Since Marshall's false arrest claim under § 1983 and state law, as well his malicious prosecution claim under state law, are moving forward, he may also bring failure to intervene claims.  Although Officer Gallagher cannot be held directly liable for these violations and for failure to intervene and stop those alleged violations, Marshall may proceed with these claims in the alternative.  <u>See Bridgeforth v. City of New York</u>, 2018 WL 3178221, at *12

---

[7]      Although, as mentioned above, Marshall's false arrest damages may be limited by the officers' subsequent discovery of marijuana, the parties did not brief or discuss at oral argument whether the same principles apply to New York state—as opposed to § 1983—malicious prosecution claims.

(S.D.N.Y. June 28, 2018) ("Plaintiffs may bring both direct liability and failure to intervene claims against those police officers who participated in the [alleged constitutional violation]."); see also, e.g., Buchy v. City of White Plains, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015); Cumberbatch v. Port Auth. of N.Y. and N.J., 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006). Therefore, depending on the evidence adduced at trial, a reasonable jury could find that Officer Gallagher knew of but failed to intervene in a violation of Marshall's rights. See Allen v. City of New York, 480 F. Supp. 2d 689, 694–95 (S.D.N.Y. 2007) (denying summary judgment where factual questions remained on ability to intervene).

V.      Malicious Abuse of Process

In New York, a malicious abuse of process claim lies against "a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quotation marks omitted). "The crux of a malicious abuse of process claim is the collateral objective element." Douglas v. City of New York, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). "[A] plaintiff must establish that the defendants had an improper purpose in instigating the action" and must claim that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." Savino, 331 F.3d at 77.

Defendants challenge the "collateral objective" element of Marshall's claim. Marshall contends that the Defendants employed criminal process against Marshall solely because of his past criminal history. However, this claim is meritless. Marshall has not offered any evidence that the officers had an "improper motive or pursued a collateral purpose outside the legitimate ends of process." Bertuglia v. City of New York, 133 F. Supp. 3d 608, 638

(S.D.N.Y. 2015).  Although there are disputed issues of fact as to Marshall's malicious

prosecution claim, a "malicious motive alone, however, does not give rise to a cause of action for

abuse of process."  Curiano v. Suozzi, 469 N.E.2d 1324, 1326–27 (N.Y. 1984).  Therefore,

Defendants' motion for summary judgment is granted as to the malicious abuse of process

claims.

VI.      Deprivation of Rights and Denial of Equal Protection

         The Equal Protection Clause of the Fourteenth Amendment commands that no

state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S.

Const. amend. XIV, § 1.  At its core, the Equal Protection Clause prohibits the disparate

treatment of similarly situated individuals.  City of Cleburne v. Cleburne Living Ctr., 473 U.S.

432, 439 (1985); Plyler v. Doe, 457 U.S. 202, 216 (1982).  "To establish a violation of the Equal

Protection Clause based on selective enforcement, a plaintiff must ordinarily show the following:

(1) that the person, compared with others similarly situated, was selectively treated; and (2) that

such selective treatment was based on impermissible considerations such as race, religion, intent

to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure

a person."  Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004) (alterations and

citation omitted).[8]

         Marshall offers no evidence of disparate treatment on the basis of race and relies

solely on his conclusory allegations that there were similarly situated "people sitting on different

---

[8]      Marshall does not distinguish between his federal and state equal protection causes of action.  Article I,
Section 11 of the New York State Constitution provides that "[n]o person shall be denied the equal protection of the
laws of this state or any subdivision thereof."  N.Y. Const. art. I, § 11.  "The New York Court of Appeals has
recognized that a plaintiff may bring constitutional tort claims for damages independent of a common law cause of
action.  However, this claim is a narrow remedy available only when there is no alternative remedy, such as actions
at common law or under Section 1983."  Edrei v. City of New York, 254 F. Supp. 3d 565, 583 (S.D.N.Y. 2017)
(citations and quotation marks omitted), aff'd sub nom. Edrei v. Maguire, 892 F.3d 525 (2d Cir. 2018).  Since
Marshall is bringing this claim under § 1983, he has an alternative remedy available to him under federal law.
Therefore, his state equal protection claim is redundant and precluded.

benches" in the PABT who were not approached.  (Marshall Dep., at 83:4–84:2.)  His

unsupported allegations are insufficient to defeat summary judgment for his equal protection

claim.  See Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 65 (2d Cir. 1997); Cuoco v. U.S.

Bureau of Prisons, 2001 WL 167694, at *4 (S.D.N.Y. Feb. 16, 2001) (bald faced allegations of

an equal protection violation insufficient as a matter of law).[9]  As such, Defendants' motion for

summary judgment is granted as to the deprivation of rights and denial of equal protection

claims.

VII.   Conspiracy Under 42 U.S.C. §§ 1985(3) and 1986

       To establish a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2)

for the purpose of depriving, either directly or indirectly, any person or class of persons of equal

protection of the laws, or of equal privileges and immunities under the laws; (3) an act in

furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right of a citizen of the United States."  Mian, 7 F.3d at 1087–88.  Additionally,

the conspiracy is actionable only if it involves "some racial, or perhaps otherwise class-based,

invidious discriminatory animus behind the conspirators' action."  United Bd. of Carpenters

Local 610 v. Scott, 463 U.S. 825, 829 (1983) (quotation marks omitted).

       Defendants argue that dismissal is warranted on the grounds that Marshall fails to

produce a scintilla of evidence rising to the level of a conspiracy, or in the alternative, that his

claim is barred by the "intracorporate conspiracy doctrine."  This Court need not decide whether

the intracorporate conspiracy doctrine applies, because no reasonable jury could conclude that

---

[9]     Although not addressed by Marshall, his claim under § 1981 suffers a similar fate.  To establish a claim under § 1981, a plaintiff must set forth facts showing: (1) membership in a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam).  His claims for racial discrimination are unsubstantiated by the record.  "[M]ere suspicion or surmise is inadequate to support a section 1981 claim."  Hart v. Westchester Cty. Dep't of Soc. Servs., 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001).

Officers Mathews and Gallagher engaged in a civil rights conspiracy.  Marshall has not

"provide[d] [any] factual basis supporting a meeting of the minds, such that defendants entered

into an agreement, express or tacit, to achieve the unlawful end."  Webb v. Goord, 340 F.3d 105,

110 (2d Cir. 2003) (quotation marks omitted).  Additionally, Marshall only offers conclusory

allegations that the actions involved discriminatory animus.  Because there is no evidence of

racial or other class-based animus on the record, Defendants are entitled to summary judgment

on Marshall's § 1985(3) claim.  See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996)

(finding that district court properly granted summary judgment dismissing § 1985(3) claim

where plaintiff only offered conclusory allegations of racial discrimination).  And since a § 1986

claim must be predicated upon a valid § 1985 claim, summary judgment is granted on Marshall's

§ 1986 claim as well.  Mian, 7 F.3d at 1088.

VIII.   Claims against the Port Authority

It is well settled that a municipality, such as the Port Authority,[10] may not be held

liable in a § 1983 action solely on the basis of a respondeat superior theory.  Monell v. Dep't. of

Soc. Servs., 436 U.S. 658, 691, 695 (1978).  Rather, liability must arise from the "execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy."  Monell, 436 U.S. at 694.  A plaintiff can

establish an "official policy or custom by showing any of the following: (1) a formal policy

officially endorsed by the municipality; (2) actions or decisions made by municipal officials with

decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom

of which policymakers must have been aware; or (4) a failure by policymakers to properly train

---

[10]    "Although the Port Authority, a bi-state agency, is not technically a municipality, courts have treated it as such and have analyzed claims against it under the standards governing municipal liability under Section 1983." Mack v. Port Auth. of N.Y. & N.J., 225 F. Supp. 2d 376, 382 n.7 (S.D.N.Y. 2002) (collecting cases).

or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates."  Roundtree v. City of New York, 2018 WL 1586473, at *13 (S.D.N.Y. Mar. 28, 2018) (quotation marks omitted).

In this case, Marshall presents no evidence of a custom or policy officially endorsed by the Port Authority, nor does he show that municipal officials—those imbued with decision-making authority—implemented policies or took actions designed to deprive Marshall of his constitutional rights.  See Raysor v. Port Auth. of N.Y. & N.J., 768 F.2d 34, 38 (2d Cir. 1985); see also Monell, 436 U.S. at 690–91.  To the contrary, Marshall offers nothing but conclusory allegations that the Port Authority's "lack of policy" in the restricted area of the PABT gave the officers discretion to arrest Marshall based on his criminal record.  To extent Marshall attempts to bring a claim against the Port Authority for its failure to train and supervise its employees, Marshall misses the mark.  His allegation that the officers lacked probable cause to arrest him, absent evidence of a pattern of similar conduct, is legally insufficient as "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . .  unless [the incident] was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985); accord Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986).

Marshall also includes the Port Authority as a defendant in all of his New York state claims in this action on the basis of respondeat superior.  Additionally, he seeks to hold the Port Authority liable for negligent hiring, retention, and supervision.  "The Port Authority, a bi-state agency created by a compact between New York and New Jersey, enjoyed sovereign immunity until 1951, when New York and New Jersey consented to suits against it in limited circumstances."  Caceres v. Port Authority, 631 F.3d 620, 624 (2d Cir. 2011).  While the Port

Authority may be sued for state law violations, a plaintiff must: (1) commence the suit within one year from the date of the accrual of the cause of action, and (2) serve a notice of claim on the Port Authority at least sixty days before such suit is commenced.  N.Y. Unconsol. Laws § 7107. "These requirements are jurisdictional," and thus, the failure to satisfy them "will result in withdrawal of [a] defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction."  Caceres, 631 F.3d at 624–25 (quotation marks and citations omitted); see also Aegis Ins. Servs., Inc. v. Port Auth. of N.Y. & N.J., 435 F. App'x 18, 25 (2d Cir. 2011) (summary order).

Here, according to the Port Authority, Marshall failed to serve a notice of claim at least sixty days before commencing his suit.  Marshall did not present evidence to the contrary and fails to respond to the Port Authority's argument supporting summary judgment on this claim.  Therefore, his claims are deemed abandoned.  See Douglas v. Victor Capital Grp., 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (granting summary judgment in favor of defendant on all of plaintiff's claims that were not addressed by plaintiff in its opposition papers and therefore abandoned); see also Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").  Accordingly, this Court dismisses Marshall's state law claims against the Port Authority for lack of subject matter jurisdiction.  See Caceres, 631 F.3d at 624–25.

IX.   Qualified Immunity

"Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe

21

that his actions were lawful at the time of the challenged act." Jenkins, 478 F.3d at 87 (quotation

marks omitted).  Even if an officer did not have probable cause to arrest, "an arresting officer

will still be entitled to qualified immunity from a suit for damages if he can establish that there

was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to

believe that probable cause existed, or (b) officers of reasonable competence could disagree on

whether the probable cause test was met." Escalera, 361 F.3d at 743 (quotation marks omitted).

Defendants rehash their arguments that Officers Mathews and Gallagher acted in

an objectively reasonable manner and are entitled to qualified immunity, because there was at

least "arguable probable cause" to arrest Marshall.  However, "if the officer's reasonableness

depends on material issues of fact," as in this case, "then summary judgment is inappropriate for

both New York and federal false arrest claims." Jenkins, 478 F.3d at 88; see also Marshall v.

Sullivan, 105 F.3d 47, 52 (2d Cir. 1996) (denying summary judgment on qualified immunity

grounds where plaintiff presented evidence from which "a rational juror could infer . . . that

[plaintiff] was arrested not because of any reasonable belief . . . that there had been unlawful

conduct . . . but rather because of improper conduct on the part of [the arresting officer]").[11]

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment is granted

in part and denied in part.  Defendants' motion for summary judgment is granted as to Marshall's

claims for: malicious prosecution under § 1983; malicious abuse of process under § 1983 and

---

[11]     "New York courts also recognize the defense of qualified immunity to state law claims of malicious prosecution." Johnson v. City of New York, 2011 WL 2693234, at *4 (S.D.N.Y. June 30, 2011) (citing Jenkins, 478 F.3d at 88).  Here, the disputes of material fact as to Marshall's trespassing arrest preclude this Court from determining whether the officers had arguable probable cause to believe that the prosecution could succeed. Similarly, qualified immunity is unavailable based on the failure to intervene claims, which rely on the same set of disputed facts.

state law; deprivation of rights and denial of equal protection of the laws under §§ 1983 and 1981, as well as state law; conspiracy under §§ 1985(3) and 1986; state common law negligent hiring; and his <u>Monell</u> claim against the Port Authority.  Officers Mathews and Gallagher's motion for summary judgment is denied with respect to Marshall's federal and state law claims for false arrest and false imprisonment, and failure to intervene, as well as his malicious prosecution claim under state law.  Defendants Tone, Carlson, and the Port Authority are dismissed from this action.  The Clerk of Court is directed to terminate the motion pending at ECF No. 53.

Dated: September 21, 2020
      New York, New York

                        SO ORDERED:

                        WILLIAM H. PAULEY III
                        U.S.D.J.