UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                            :

CEDRIC MARSHALL,                     :

               Plaintiff,     :

                            :               19-cv-2168 (LJL)

     -v-                 :

                            :         OPINION AND ORDER

THE PORT AUTHORITY OF NEW YORK   :
AND NEW JERSEY, BRYAN MATTHEWS,  :
CRAIG CARLSON, SEAN GALLAGHER,   :
JOHN TONE, and JOHN or JANE DOE 1-10, :
individually and in their official capacities as  :
police officers,                 :

                            :

             Defendants.   :

                            :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/05/2022

LEWIS J. LIMAN, United States District Judge:

       Trial in this case is scheduled to begin on February 6, 2023.  Dkt. Nos. 92, 94.  Before the

Court are motions *in limine* brought by defendants Officers Brian Mathews ("Mathews") and

Sean Gallagher ("Gallagher," and with Mathews, the "Defendants") of the Police Department of

the Port Authority of New York and New Jersey ("Port Authority"), and plaintiff Cedric

Marshall ("Marshall" or "Plaintiff").  Dkt. Nos. 70, 74.

       For the following reasons, the Court grants in part and denies in part Defendants' motion

*in limine* and denies Plaintiff's motion *in limine*.

## BACKGROUND

       Plaintiff brings claims against Defendants for false arrest in violation of the United States

Constitution (enforceable through 42 U.S.C. § 1983) and New York law, failure to intervene

under Section 1983 and New York law, and malicious prosecution under New York law.  *See*

*generally* Dkt No. 64.  The claims stem from an incident, on the morning of November 4, 2017,

when Plaintiff was arrested on charges of criminal trespass for being unlawfully present in the "ticketed passengers only" area of the Port Authority Bus Terminal. *Id*. at 1–2. Plaintiff claims he had a bus ticket and was lawfully in the "ticketed passengers only" area but that the officers arrested him without asking for the ticket; Defendants deny Plaintiff's allegations. *Id*. at 2, 8. After Plaintiff was arrested, the officers observed him dispose (and attempt to dispose) of narcotics in his possession leading to charges against him related to the possession of controlled substances, the use of drug paraphernalia, and tampering with physical evidence (in addition to the charge of trespass). *Id*. at 3–4. After the felony charges were dismissed at the request of the State, all charges against Plaintiff were ultimately dismissed on speedy trial grounds. *Id*. at 4.[1]

Defendants move *in limine* for an order permitting them to cross examine Plaintiff on his prior convictions, his use of aliases, and his provision of false information to authorities. They also seek to preclude Plaintiff from offering evidence of officers Carlson and Tone, who are no longer defendants in this litigation, from requesting a specific dollar amount from the jury, and from making reference or offering any evidence regarding the Port Authority's potential indemnification of Defendants. Finally, Defendants seek an order bifurcating Plaintiff's punitive damages claim for trial. *See generally* Dkt. No. 70. Plaintiff cross-moves for an order imposing

---

[1] At oral argument on Defendants' motion for summary judgment, Plaintiff withdrew all claims against Police Officers Craig Carlson and John Tone. Dkt. No. 64 at 5. By order of September 21, 2020, the Court granted in part and denied in part the motion of Defendants for summary judgment. *Id.* The Court granted summary judgment to Defendants on Plaintiff's claims for malicious prosecution under federal law, malicious abuse of process, deprivation of rights and denial of equal protection, and conspiracy and dismissed all claims against the Port Authority. The Court also held that Plaintiff could proceed on his false arrest claims only based on injuries stemming from the brief interval between his initial detention on the morning of November 4, 2017 and the officers' discovery of marijuana in Plaintiff's possession while he was being transported to police command shortly thereafter. Dkt. No. 64 at 11. Previously, Plaintiff withdrew his claims of excessive force, assault, battery, and emotional distress. Dkt. No. 42.

spoliation sanctions on Defendants for failing to preserve materially relevant video surveillance recordings.  Dkt. Nos. 73, 74 at 10–17.[2]

Defendants' motion is granted in part and denied in part.  Plaintiff's motion is denied.

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).  The decision whether to grant an *in limine* motion "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'"  *United States v. Ray*, 2022 WL 558146, at *1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)).  "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006).  "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial."  *United States v. Perez*, 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

---

[2] Plaintiff does not oppose Defendants' motion to the extent that it seeks an order precluding Plaintiff from offering evidence of the other officers who were Defendants in this case and from making reference to indemnification from the Port Authority.  Those motions are granted.

**DISCUSSION**

**I.**     **Introduction of Plaintiff's Prior Convictions**

    **A.**     **Plaintiff's 2013 Robbery Conviction for Impeachment**

Defendants move for an order permitting them to offer evidence on impeachment of Plaintiff's 2013 conviction for robbery in the third degree.  Dkt. No. 72 at 2–4.  Plaintiff was arrested in August 2012 on charges of grand larceny in the fourth degree in violation of New York Penal Law § 155.30.  Dkt. No. 71-1 at ECF p.6.  He pleaded guilty in June 2013 to the charge of robbery in the third degree in violation of New York Penal Law § 155.30 and was sentenced to a term of two to four years imprisonment.  *Id.* at ECF pp. 6–7; *see also* Dkt. No. 71-2 at 21–24 (deposition transcript).

Federal Rule of Evidence 609(a)(1) provides that a witness's character for truthfulness may be attacked "by evidence of a criminal conviction . . . for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year."  Fed. R. Evid. 609(a)(1).  Such evidence "must be admitted, subject to Rule 403, in a civil case."  *Id.* 609(a)(1)(A).  Under Rule 403, such evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The presumption under Rule 609(a) "is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed" are to be admitted for impeachment purposes.  *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005).

For the Rule 403 analysis under Rule 609(a)(1), the Second Circuit has instructed that "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  *Estrada*, 430 F.3d at 617.  "In balancing probative value against

prejudicial effect under [Rule 609(a)(1)], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)); *City of Almaty, Kazakhstan v. Ablyazov*, 2022 WL 16901995, at *8 (S.D.N.Y. Nov. 11, 2022) (denying admission of evidence of murder-for-hire); *Casmento v. Volmar Constr., Inc.*, 2022 WL 1094529, at *3 (S.D.N.Y. Apr. 12, 2022) (assessing these factors in Rule 609(b) context of falsification of business records conviction more than 10 years earlier); *Djangmah v Falcione*, 2013 WL 6388364, at *12 (S.D.N.Y. Dec. 5, 2013) (admitting evidence of larceny conviction).

Plaintiff's 2013 conviction for robbery in the third degree is admissible for impeachment purposes and, should Plaintiff testify, Defendants will be permitted to offer evidence of the conviction, including the statutory name of the offense, the date of conviction, and the sentence imposed.  First, robbery ranks "high on the scale of probative worth on credibility," even if it is not a *crimen falsi*.  *Estrada*, 430 F.3d at 617–18 (providing that "theft" ranks high on scale of probative value on credibility); *Ramsay-Nobles v. Keyser*, 2020 WL 359901, at *5 (S.D.N.Y. Jan. 22, 2020) (concluding that the probative value of robbery for impeachment purposes is high); *Williams v. McCarthy*, 2007 WL 3125314, at *1–2 (S.D.N.Y. Oct. 25, 2007) (holding that attempted robbery and grand larceny convictions were admissible for impeachment purposes under Rule 609(a)).  Second, "Plaintiff's conviction is not so ancient as to lose any probative force or to 'suggest that [Plaintiff] had abandoned his earlier ways.'"  *Casmento*, 2022 WL 1094529, at *4 (quoting *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981)).  Third, there is no evidence that crime of robbery to which Plaintiff pleaded guilty and the crime of trespassing

for which Plaintiff was arrested are "so similar as to invite improper inferences," *Gilbert*, 668 F.2d at 97.  The jury will be able to understand the prior conviction for its impeachment value, without taking it as propensity evidence.  *See United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) ("[T]he conviction was for a crime substantially different from the instant prosecution, so that there was not here the prejudice to appellant that inevitably results from the introduction of a conviction for the same crime as that for which he is on trial.").  "Finally, this is a case in which the Plaintiff's credibility will be 'crucial' and 'critical.'"  *Casmento*, 2022 WL 1094529, at *4 (quoting *United States v. Payton*, 159 F.3d 49, 57–58 (2d Cir. 1998)); *see Ridge v. Davis*, 2022 WL 16737299, at *4 (S.D.N.Y. 2002) ("Plaintiff's credibility is highly important in this case, as he will be the primary fact witness on his own behalf offering his description of the events in question." (internal quotation marks omitted)).  The Joint Pretrial Order lists only the Plaintiff, as well as the arresting officers, as witnesses Plaintiff intends to call at trial.  Dkt. No. 66 at 12.  In his opinion denying in part Defendants' motion for summary judgment, Judge Pauley concluded that it was "Marshall's testimony [that was] sufficient to bar summary judgment" and to create an issue of fact for trial.  Dkt. No. 64 at 9.

Plaintiff argues that the conviction should not be admitted because Defendants failed to disclose Plaintiff's criminal record under Federal Rule of Civil Procedure 37(c)(1).  Dkt. No. 73 at 4.  The argument is without merit.  There was no obligation to disclose that record. Defendants did not need to produce Plaintiff's criminal record to Plaintiff during discovery because Plaintiff did not serve a discovery request for the record, nor was such disclosure required by Rule 26.  *See* Dkt. No. 78 at 2.  In any event, Plaintiff knows about his 2013 conviction and about Defendants' interest in it; Plaintiff was questioned extensively about this conviction at his deposition in this case, during which he admitted to it.  *See* Dkt. No. 71-2 at 21–

24.  The record was included with Defendants' motion filed on January 15, 2021, *see* Dkt. No. 71-1, and trial is not scheduled until February 2023.  Plaintiff has suffered no prejudice.  *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012) (stating that sanctions may not be imposed when the failure to disclose is harmless, and that "'[h]armlessness' means an absence of prejudice to the defendant." (alterations accepted and citation omitted)).

**B.**     **Introduction of Plaintiff's 2011 and 1978 fraudulent accosting convictions for impeachment**

Plaintiff was convicted upon pleas of guilty in August 2011, and in February and March 1978, to misdemeanor charges of fraudulent accosting in violation of New York Penal Law § 165.30.  Dkt. No. 71-1 at ECF pp. 8, 11, 13.  Defendants argue that they should be permitted to inquire into Plaintiff's 2011 misdemeanor fraudulent accosting conviction under Federal Rule of Evidence 609(a)(2) and into his February and March 1978 fraudulent accosting convictions under Federal Rule of Evidence 609(b).  Dkt. No. 72 at 4–5.

Federal Rule of Evidence Rule 609(b) applies to both convictions here because each of those convictions will have occurred more than ten years before the trial in this case.[3]  Rule 609(b) provides that evidence of a conviction that is more than ten years old "is admissible only if: (1) its probative value, supported by specific facts and circumstances substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  Fed. R. Evid. 609(b).  The ten years is measured from the later of the date of the witness's conviction or

---

[3] At the time Defendants' motion was made, fewer than ten years had passed since the 2011 conviction.  However, the ten-year period is calculated from the time of trial, so these convictions are subject to Rule 609(b).  *See United States v. Weichert*, 783 F.2d 23, 26 (2d Cir. 1986) (determining the ten-year period based on date of trial); *United States v. Pedroza*, 750 F.2d 187, 203 (2d Cir. 1984) (same); *Casmento*, 2022 WL 1094529, at *4 (same).

his release from confinement.  *Id.*  Before admitting a conviction under Rule 609(b), "the district just must make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice."  *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978); *see Payton*, 159 F.3d at 57 ("A determination that the probative value of the conviction substantially outweighs its prejudicial effect must be made on-the-record and based on 'specific facts and circumstances'") (quoting Fed. R. Evid. 609(b)).  The court considers the same factors it considers with respect to Rule 609(a), including the impeachment value of the prior conviction, whether credibility is a crucial issue, whether the two crimes are so similar as to invite improper inferences, and the age of the prior conviction and the defendant's subsequent history.  *See*, *e.g.*, *Gilbert*, 668 F.2d at 97 (determining that prior conviction for mail fraud more than ten years ago was admissible under these standards); *Casmento*, 2022 WL 1094529, at *3 (concluding that falsification of business records conviction was admissible); *Sanders v. Ritz-Carlton Hotel Co., LLC*, 2008 WL 4155635, at *5 (S.D.N.Y. Sept. 9, 2008) (concluding that tax evasion conviction was admissible); *Daniels*, 986 F. Supp. at 252 (concluding that convictions for unlawful use and possession of a firearm were inadmissible).  "[C]onvictions over ten years old [should] be admitted 'very rarely and only in exceptional circumstances.'"  *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. (93 Stat.) 7051, 7062)); 4 Weinstein's Federal Evidence § 609.06[1] at 609-49–50 (same).

In the exercise of its discretion, the Court will not receive the convictions.  With respect to the first factor, the impeachment value of the two prior convictions is marginal.  Under New York Penal Law § 165.30(1): "A person is guilty of fraudulent accosting when he accosts a person in a public place with intent to defraud him of money or other property by means of a

trick, swindle or confidence game."  Although a number of courts have held that the crime is

*crimen falsi*, *see*, *e.g.*, *Williams*, 2007 WL 3125314, at *2 ("Fraudulent Accosting is a *crimen

falsi* crime."); *Martin v. National R.R. Passenger Corp.*, 1998 WL 575183, at *4 (S.D.N.Y. Sept.

9, 1998) ("[F]raudulent accosting is *crimen falsi* crime"), the statute itself does not require that

any dishonest act be taken or any false statement made.  The statute requires only that the

defendant "accost" another with the intent to defraud; it is not necessary that he make a false

statement or otherwise act dishonestly.  McKinney's Penal Law § 165.30 Practice

Commentaries.  To accost means simply "to approach and speak to another person without first

being spoken to" or, in other words, to "initiate contact with the potential victim in some

manner."  *People v. Tanner*, 153 Misc. 2d 742, 745 (Crim. Court 1992) (citation omitted).

Although those elements might be sufficient for a fraudulent accosting conviction to be

admissible if recent under Rule 609(a)(2),[4] Rule 609(b) makes even crimes involving dishonest

acts presumptively inadmissible if they are more than ten years old.  *See Ramsay-Nobles*, 2020

WL 359901, at *2.  The fact that the crimes do not involve a consummated act of a false

statement or a dishonest act make them less probative.  The fact that the convictions are for a

misdemeanor under state law further decreases their impeachment value.  The record reflects that

Plaintiff was sentenced to a fifteen-day concurrent sentence on the two 1978 convictions and that

---

[4] Numerous courts have held that convictions for crimes such as wire fraud, bank fraud, and mail fraud, and conspiracy to commit the same, are admissible under Rule 609(a)(2) notwithstanding that they require only an intent to defraud and an act in furtherance of the scheme or conspiracy without necessarily requiring a consummated dishonest act or false statements.  *See*, *e.g.*, *United States v. Cohen*, 544 F.2d 781, 785 (5th Cir. 1977) (mail fraud); *United States v. Brashier*, 548 F.2d 1315, 1326–27 (9th Cir. 1976) (conspiracy to issue unauthorized securities and mail fraud); *Arvest Bank v. Byrd*, 548 F. App'x 324, 327 (6th Cir. 2013) (summary order) (wire fraud); United States v. Newsom, 438 F. App'x 16, 20 (2d Cir. 2011) (summary order) (mail fraud and securities fraud); *United States v. Mesbahuddin*, 2011 WL 3841385, at *2 (E.D.N.Y. Aug. 26, 2011) (attempted bank fraud); *Patterson v. Cnty. of Wayne*, 259 F.R.D. 286, 290 (E.D. Mich. 2009) (wire fraud and conspiracy to commit wire fraud).

he pleaded guilty in full satisfaction of charges of promoting gambling and possessing a gambling device.  Dkt. No. 71-1 at ECF p. 11, 13.  With respect to the 2011 conviction, Plaintiff was sentenced to a term of forty-five days in full satisfaction of charges of unlawful possession of marijuana.  *Id.* at 8–9.  The essential facts of the convictions do not indicate Plaintiff is a person who would be prone to lie in court.  The second and third factors favor Defendants.  Credibility is a crucial issue and the two crimes are not so similar as to invite improper inferences.  But those factors alone are not sufficient to require admissibility.  The Second Circuit has instructed that convictions over ten years old are to be admitted "very rarely and only in exceptional circumstances."  *Zinman*, 983 F.2d at 434 (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. at 7062)).  Were it sufficient that credibility was crucial and the two convictions were unrelated, it would be the ordinary case that ancient convictions would be received.  Finally, by the time of trial more than ten years will have passed since Plaintiff's conviction on these misdemeanors.  Admission of the convictions would do more to brand the Plaintiff as a "criminal" and to prejudicially suggest that if Plaintiff was properly arrested in the past he must have been lawfully arrested in this case than to offer the Jury probative evidence by which to judge whether his trial testimony is truthful or not.

## II.   Introduction of Plaintiff's Use of Aliases and Other False Information Provided to Authorities

Plaintiff testified at deposition that he gave numerous false names to police officers on occasions when he was arrested, including for gambling: Jerry Stamps, George Thomas, Kevin Marshall, Cedric Yarborough, Kevin Wright, Barry Beck, Steve Lewis, Sammy Alexander, Raymond Oliver, Robert Oliver.  Dkt. No. 74-2 at 12–29.  Defendants represent from law enforcement records that, over time, Plaintiff has given authorities over a "dozen separate aliases, dozens of different dates of birth, four birth locations, and four social security numbers."

Dkt. No. 72 at 6.  Defendants argue that they should be permitted to offer evidence of that

information under Rules 402 and 608(b) as evidence of Plaintiff's character for truthfulness.  *Id.*

Federal Rule of Evidence 608(b)(1) permits specific instances of conduct to be inquired

into on cross-examination "if they are probative of the character for truthfulness or

untruthfulness of . . . the witness."  Fed. R. Evid. 608(b)(1).  "A number of courts in this Circuit

have held that a witness' use of false names or identities is the proper subject of cross-

examination under Rule 608."  *Williams*, 2007 WL 3125314, at *3 (citing cases); *see also Nibbs

v. Goulart*, 822 F. Supp. 2d 339, 351 (S.D.N.Y. 2011) ("[T]he use of aliases and false

information is indicative of a witness' character for truthfulness, and evidence of such use is

properly admitted under F.R.E. 608(b).");  *Jean-Laurent v. Wilkinson*, 2009 WL 666832, at *3

(S.D.N.Y. Mar. 13, 2009) (permitting cross-examination of plaintiff as to use of aliases);

*Fletcher v. City of New York*, 54 F. Supp. 2d 328, 333 (S.D.N.Y. 1999) (same).  Plaintiff's

contention that such aliases are irrelevant to his credibility is unpersuasive.  Dkt. No. 73 at 8.  As

the Ninth Circuit has put it in pithy terms: "If a man lie about his own name, might he not tell

other lies?" *Lyda v. United States*, 321 F.2d 788, 793 (9th Cir. 1963).

Plaintiff argues that should Defendants be permitted to inquire into the use of aliases,

they should not be allowed to inquire into whether the Plaintiff was arrested in connection with

the incident during which he gave the alias.  Dkt. No. 73 at 8–9.  The argument is not opposed

and the point is well-taken.  "Defendants may inquire into Plaintiff's use of aliases, 'without

eliciting the fact that plaintiff was arrested and/or convicted for prior criminal conduct in

connection with the use of these aliases.'" *Fletcher*, 54 F. Supp. 2d at 333 (quoting *Young v.

Calhoun*, 1995 WL 169020, at *5 (S.D.N.Y. Apr. 10, 1995)); *Jean-Laurent*, 2009 WL 666832, at

*3 (same).

### III.    Preclusion of Plaintiff from Requesting a Specific Dollar Amount from the Jury

Defendants move for an order precluding Plaintiff's counsel from suggesting a damages

amount to the Jury.  They argue that such a suggestion would create "undue prejudice or

passion."  Dkt. No. 72 at 9–10.  Plaintiff responds that under New York law counsel may make

reference to the dollar amount counsel believes provides appropriate compensation.  Dkt. No. 73

at 9–10.  In particular, Section 4016 of the New York Civil Practice Law and Rules provides that

in an action for personal injury or wrongful death, counsel may "make reference, during closing

statement, to a specific dollar amount that the attorney believes to be appropriate compensation

for any element of damage that is sought to be recovered in the action."  N.Y. CPLR § 4016.

The law also requires the jury to be instructed that the reference to specific dollar amounts is

permitted as argument and not as evidence and that the determination of damages is solely for

the jury to decide.  *Id*. § 4016(b)(1)–(3).

The determination whether to permit counsel to request a specific dollar amount from the

jury raises a question of procedure governed by federal law.  *See Rodriguez v. Senor Frog's de

law Isla, Inc.*, 642 F.3d 28, 37 n.3 (1st Cir. 2011) (stating that this is a matter of procedure

governed by federal law and describing the differences among Circuits); *Davis v. Browning-

Ferris Indus., Inc.*, 898 F.2d 836, 837 (1st Cir. 1990) (noting that "this is a matter of procedure,

the federal law applies").  *Cf. Hanna v. Plumer*, 380 U.S. 460, 470 (1965).  The Second Circuit

has held that it is left to the discretion of the trial judge to determine whether to allow a plaintiff

to request a specific damages amount from the jury.  *See Lightfoot v. Union Carbide Corp.*, 110

F.3d 898, 912 (2d Cir. 1997).  The court may "either prohibit counsel from mentioning specific

figures or impose reasonable limitations, including cautionary jury instructions."  *Id.*  Although

the Circuit has stopped short of adopting a *per se* rule, it has expressed concern that the

specification of a target amount for a jury to award could prejudicially "anchor the jurors'

expectations of a fair award at a place set by counsel, rather than by the evidence" and could suggest that the proposal "is backed by some authority or legal precedent." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *as amended* (Dec. 22, 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996); *see generally* Amos Tversky & Daniel Kahneman, Judgment under Uncertainty: Heuristics and Biases, 185 Sci. 1124 (1974) (discussing anchoring bias).

Plaintiff's reliance on CPLR § 4016 is not persuasive. That rule was controversial before it was adopted, *see* Siegel, Practice Commentary, N.Y. CPLR § 4016 (McKinney) ("Whether a party in a personal injury or wrongful death case, where damages are often unliquidated and depend entirely on the jury's appraisal, could mention specific monetary sums to the jury was a disputed issue among the judges prior to 2003."), and remains controversial today, *see* T. Capowski & J. Shaub, Improper Summation Anchoring is Turning the New York Court System on its Head and Contributing to the Demise of New York State, N.Y.L.J., Apr. 28, 2020; T. Capowski & J. Watkins, CPLR 5501(c) Review in the Age of Summation 'Anchoring' Abuse, N.Y.L.J., June 26, 2019. In cases where only a state claim is presented, CPLR § 5501(c)— applicable in federal court—may provide some protection against a runaway jury inflamed by counsel's request for an award bearing no relation to the evidence at trial. It requires the court to determine that an award is excessive if it "deviates materially from what would be reasonable compensation." N.Y. CPLR § 5501(c); *see Gasperini v. Center for Humanities, Inc.* 518 U.S. 415, 426–39 (1996) (holding that CPLR § 5501(c) is applicable to state claims in federal court). But Plaintiff provides no convincing argument for why N.Y. CPLR § 4016 should be applied in federal court in a case that presents federal claims, and where the only protection would be the Court's general instruction that arguments of counsel are not evidence and where an award can

be overturned for a new trial only if it "is so high as to shock the judicial conscience and constitute a denial of justice," *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988) (internal quotations and citations omitted)).  In federal court, the trend of decisions thus has been to permit the plaintiff to submit to the jury during closing argument a specific dollar amount regarding compensable damages, if any, that he alleges he suffered as a result of a defendant's actions, without allowing plaintiff to submit to the jury a specific dollar amount regarding non-economic damages or an aggregate amount that includes non-economic damages.  *See Woolfolk v. Baldofsky*, 2022 WL 2600132, at *4 (E.D.N.Y. July 8, 2022) ("[T]he Court adopts the approach of other courts in this Circuit and prohibits Plaintiff from submitting to the jury a request for a specific dollar amount regarding his non-economic damages."); *Ross v. Guy*, 2022 WL 768196, at *7 (E.D.N.Y. Mar. 14, 2022) (same); *Scoma v. City of New York*, 2021 WL 1784385, at *13 (E.D.N.Y. May 4, 2021) (citing cases); *Gogol v. City of New York*, 2018 WL 4616047, at *5–6 (S.D.N.Y. Sept. 26, 2018).  The Court will follow that trend here.

Accordingly, Plaintiff will not be permitted to request a specific dollar amount from the Jury or to suggest a dollar amount regarding non-economic damages but will be permitted to make reference to a specific dollar amount for any economic damages that would be supported by evidence in the record.

## IV.    Bifurcation of Punitive Damages for Trial

Defendants move, under Federal Rule of Civil Procedure 42(b), for an order bifurcating Plaintiff's punitive damages claim and reserving trial on that issue until after a finding on liability and compensatory damages.  Dkt. No. 72 at 7–8.  Defendants principally argue that they should be permitted to offer evidence of their financial condition and net worth and their inability to pay at the appropriate time which they state is after the jury has returned a plaintiff's

verdict on liability and compensatory damages.  *Id*. at 7.  They argue that forcing them to offer

such evidence during the trial on liability and compensatory damages would cause prejudice (if

the Jury believed Defendants were able to pay), would confuse the Jury, and would result in a

waste of time.  *Id.* at 8–9.  The motion is not opposed.

Federal Rule of Civil Procedure 42(b) provides that the court, "[f]or convenience, to

avoid prejudice, or to expedite and economize, . . . may order a separate trial of one or more

separate issues . . . ."  Fed. R. Civ. P. 42(b).

The Second Circuit has instructed:

> Since it often would be prejudicial to a defendant to attempt to litigate its financial
> condition during the trial on the issues of liability and compensatory damages, the
> preferred method of accommodating the various interests is to delay trial as to the
> amount of an award of punitive damages until the usual issues of liability and
> compensatory damages have been tried, along with the matter of whether the
> defendant's conduct warrants any award of punitive damages at all.  If the jury finds
> in favor of the claimant on all of these issues, the parties should then be allowed to
> present evidence with respect to the amount of the punitive damage award.

*Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 373–74 (2d Cir. 1988); *see also Sooroojballie*

*v. Port Auth. of New York & New Jersey*, 816 F. App'x 536, 549–50 (2d Cir. 2020) (same).

Defendants' motion is granted.  The Court will try the question of the amount of punitive

damages only after the Jury determines that an award of punitive damages is warranted.

## V.    Spoliation Sanctions

Plaintiff moves for spoliation sanctions for Defendants' failure to preserve surveillance

videotapes that Plaintiff claims would have shown the scene of the incident and been relevant to

his false arrest claim.  Dkt. No. 73 at 10–17.  He argues that the Port Authority had numerous

video surveillance cameras that would likely have captured Plaintiff's arrest and the events

immediately prior to it, that Defendant Mathews was aware of the existence of the surveillance

cameras, and that Defendants failed to take action to retrieve the recordings.  *Id*. at 14.

The Second Circuit defines spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). A party seeking sanctions for spoliation has the burden of establishing the elements of a spoliation claim. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (citation omitted); *see also John Wiley & Sons v. Book Dog Books, LLC*, 2015 WL 5769943, at *6 (S.D.N.Y. Oct. 2, 2015) (citations omitted) (same). These elements are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted) (*quoting Residential Funding Corp.*, 306 F.3d at 107); *see also Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017), *objections overruled*, 2017 WL 3172715 (S.D.N.Y. July 25, 2017), *aff'd sub nom. Tchatat v. City of New York*, 795 F. App'x 34 (2d Cir. 2019). Sanctions are personal. The destruction of documents by one party (including one who has been dismissed from the case) cannot give rise to a spoliation sanction against another party. *See*, *e.g.*, *Grant v. Salius*, 2011 WL 5826041, at *3 (D. Conn. Nov. 18, 2011) (favorably citing caselaw which "considered the applicability of the sanctions independently with respect to each individual defendant and held that spoliation sanctions . . . were unwarranted against those individual defendants where plaintiffs could not demonstrate they actually spoliated any evidence").

Mathews testified at deposition that there were two types of surveillance cameras in the area where Plaintiff was arrested—New Jersey Transit cameras to which the Port Authority does

not have access and then "cameras that are accessible by the tour commander and Port Authority operations." Dkt. No. 75-2 at 61.  He also testified that he did not take the time to look at the Port Authority cameras, that he did not know if they recorded, and that he never thought "to get the cameras of any part of this incident."  *Id.* at 61–62.  When asked if there was any reason he did not get the camera recordings, he answered "No."  *Id.* at 62.  He was not aware of any instance in which Port Authority officers retrieved the cameras from the main Port Authority building.  *Id.* at 64.[5]  By December 5, 2017, 31 days after the arrest, any video surveillance records in the Port Authority Bus Terminal would have been automatically overwritten.  Dkt. No. 79 ¶¶ 3–4.  Plaintiff offers no testimony from Gallagher similar to that offered with respect to Mathews.

Plaintiff has not established that Defendant Mathews had an obligation to preserve the videotape from Plaintiff's initial arrest or that he allowed it to be destroyed with a culpable mind. "To meet the first element of spoliation, plaintiff must show that defendants 'had an obligation to preserve [the evidence] at the time it was destroyed.'"  *Tchatat*, 249 F. Supp. 3d at 707 (quoting *Chin*, 685 F.3d at 162).  The duty to preserve evidence "most commonly [arises] when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation."  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  Here, Defendants would not have reasonably anticipated that they would be sued prior to the date that they were served following Plaintiff issuing his first summons and

---

[5] There was deposition testimony that Mathews viewed videotape, that was not preserved from the stationhouse, where Plaintiff allegedly dropped a package containing narcotics.  *Id.* at 94–95.  However, no claims regarding Plaintiff's treatment at the stationhouse remain in this case.  Dkt. No. 64 at 11.

complaint on February 5, 2019.  There was no notice of claim made in the case.  By that time, however, whatever surveillance video might have existed from the Port Authority Bus Terminal was long gone.  See *Kosmidis v. Port Auth. of New York & New Jersey*, 2020 WL 5754605, at *4–9 (S.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 7022479 (S.D.N.Y. Nov. 30, 2020) (holding that spoliation sanctions were not warranted because defendants denied that they had engaged in misconduct, there was no reason to expect litigation).

Plaintiff cannot create a duty to disclose with respect to the civil case from the State's *Brady* obligation to produce exculpatory evidence in the criminal case against Plaintiff.  The Supreme Court has held that the Constitution does not "impos[e] on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution."  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also United States v. Nyenekor*, 784 F App'x 810, 813 (2d Cir. 2019) (same).  A criminal defendant can show a due process violation only if he can show that the police acted with "bad faith" in failing to preserve "potentially useful evidence."  *Youngblood*, 488 U.S. at 58.  Plaintiff offers no reason to infer either bad faith or that the surveillance tape had potentially useful evidence.  The criminal case against Plaintiff was based on charges in a complaint dated November 4, 2017.  Dkt. No. 75-6 at 3.  It charged Plaintiff with one count of criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.16(1), three counts of tampering with physical evidence in violation of N.Y. Penal Law § 215.40(2), one count of criminally using drug paraphernalia in the second degree in violation of N.Y. Penal Law § 220.50(2), and two counts of criminal possession of a controlled substance in the seventh degree in violation of N.Y. Penal Law § 220.03.  Plaintiff was also charged with one count of trespass in violation of N.Y. Penal Law § 140.05 and one count of unlawful

possession of marijuana, a violation, in violation of N.Y. Penal Law § 221.05.  *Id*. at 1–2.  As noted earlier, the charges other than trespass all arose from Plaintiff's conduct *after* he was arrested and escorted from the bus terminal.  While Plaintiff was being escorted to the Port Authority Bus Terminal police command, the police observed him drop a bag of marijuana and a folded dollar bill that contained a white powdery substance.  *See* Dkt. No. 64 at 2–3.  Then, after Plaintiff was taken to the prisoner search area and handcuffed to the search wall, the officers observed him concealing tinfoil under his foot.  *Id*. at 3.  They searched him and discovered two bags containing powdery substances inside his sock.  *Id*.  When Plaintiff was in a holding cell, the officers prevented him from flushing the toilet and recovered a powdery substance.  *Id*.  The substance on the dollar bill and in the tin foil later tested positive for cocaine and the substance in the bag tested positive for marijuana, while tests of the bags inside Plaintiff's sock and found in the toilet bowl did not reveal any controlled substances.  *Id*. at 3 n.2.  On November 9, 2017 (before any surveillance tape was overwritten), the District Attorney's Office dismissed his felony charge and requested that the case proceed as a misdemeanor.  Ultimately, on February 7, 2018, the case was dismissed on speedy trial grounds.  *Id*. at 4.

Even assuming that a duty to preserve evidence for a criminal case can be imported to create a duty to preserve that evidence for a civil case giving rise to spoliation sanctions, there is no reason to believe that any evidence that was discarded here was "potentially useful" either to the criminal case or Plaintiff's civil case or that the police acted in "bad faith."  In the first instance, there is no evidence that the video from within the Port Authority Bus Terminal would necessarily have captured the encounter between Plaintiff and the authorities or that, even if it did, the videotape would have captured anything of evidentiary value with respect either to the trespass charge or with respect to Plaintiff's claims now.  There would have been no reason to

believe that the surveillance tape would have yielded useful information for Plaintiff in the criminal case.  It was never disputed that Plaintiff was in a restricted area of the bus terminal and that he did not produce a bus ticket demonstrating his entitlement to being in that area.  That criminal case, and this civil case, will turn on whether Plaintiff believed that he had a right to be in that area.  As Judge Pauley described it, the case will turn on whether the officers asked him to produce a bus ticket.  Plaintiff claims that the officers never asked him to produce his bus ticket, which he claims was in his wallet.  Dkt. No. 64 at 8.  "If a jury were to believe that Marshall possessed a bus ticket—but the officers never asked for one or asked him to leave the area—then the officers would not have probable cause to arrest him for trespass."  *Id.* at 9.  Plaintiff now argues that the video evidence "would unquestionably represent conclusive evidence in favor of at least one of the parties hereto."  Dkt. No. 73 at 13.  But he does not explain how that could be so.  There is no basis to believe that the specifics of the colloquy would have been caught on the *video*tape.  Plaintiff does not allege that there was audio or that it would have captured the conversation between him and the officers over the babble in a bus station on a Saturday morning.  There is no reason to think that the tape would have been of use in either case.

Moreover, and significantly, there is also no reason to believe that Mathews acted in bad faith in not retrieving any surveillance tape.  Mathews was in the restricted area of the bus station.  He did not need the surveillance tape to tell him what he observed—that Plaintiff was also there.  Nor would he have had any reason to suspect that the surveillance tape would show what he knew was not accurate—that Plaintiff was *not* present in the area where Plaintiff was arrested.  Thus, this is not a case where "the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant," *Youngblood*, 488 U.S. at 58.  There

is nothing in Mathews' conduct or anything in the record that would suggest that he or anyone else would think that the tape would contain exculpatory evidence.

As in *Tchatat*, this Opinion and Order is not a ruling as to the availability of a permissive adverse-inference instruction at trial to the extent the elements of spoliation have not been met. "Whether a permissive adverse-inference instruction is granted at trial may be based on factors and evidentiary support different from those required to be weighed by this Court in adjudicating the request for spoliation sanctions." *Tchatat*, 249 F. Supp. 3d at 707.

## CONCLUSION

Defendants' motion *in limine* is granted in part and denied in part. Plaintiff's motion *in limine* and for spoliation sanctions is denied. Trial with respect to the amount of punitive damages is severed from trial on liability and compensatory damages.

The Clerk of Court is respectfully directed to close Dkt. Nos. 70, 74.


SO ORDERED.

Dated: December 5, 2022
      New York, New York                          LEWIS J. LIMAN
                                            United States District Judge